**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

B&G EQUIPMENT COMPANY, INC.  :

              :

v.             Civil Action WMN-06-1363

              :

J.T. EATON & CO., INC    :


<u>MEMORANDUM</u>

Plaintiff B&G Equipment Company, Inc., which is incorporated in Delaware and has its principal place of business in Georgia, engages in the manufacture and sale of pest control equipment, including sprayers and sprayer parts. Plaintiff filed this action on May 30, 2006, alleging that Defendant is selling sprayers and sprayer parts with product configurations that are confusingly similar to Plaintiff's products. In addition, Plaintiff alleges that the literature that Defendant distributes in connection with its sprayers - its catalogue and its repair and maintenance manuals - impermissibly make use of Plaintiff's part numbers. Based on these allegations, Plaintiff brings various claims of unfair competition and trademark infringement. Defendant has moved to dismiss the action for lack of personal jurisdiction or, in the alternative, asks that the Court transfer this action to the United States District Court for the Northern District of Ohio, pursuant to 28 U.S.C. § 1404(a). Paper No. 17.

This action has a tenuous connection with Maryland, at best. As noted above, Plaintiff is a Delaware corporation headquartered in Georgia. Defendant is an Ohio corporation whose only place of

business is in Twinsburg, Ohio.  Defendant represents through the
declarations of its Vice President and Chief Financial Officer,
Jack Polenick, that Defendant is not registered to do business in
Maryland, has no employees in Maryland, and owns no property in
Maryland.  Defendant takes all orders for the allegedly
infringing sprayers in Twinsburg, Ohio, ships all sprayers from
its distribution center in Twinsburg, Ohio, and collects all
payment for sprayers in Twinsburg, Ohio.  Polenick declares that,
"[Defendant] has not, to the best of its knowledge, made a single
sale of the accused product into Maryland."  Polenick's July 20,
2006, Declaration ¶ 6.[1]

Plaintiff opposes the motion, relying primarily on a single
sale of one of Defendant's sprayers in Maryland by a third party
distributor, J.C. Ehrlich Chemical Co., Inc. (Ehrlich).[2]
Significantly, the sale took place on July 27, 2006, almost two
months after the filing of this action and six days after the
filing of the motion to dismiss.  The purchase was made by Daniel
Nestor, the president of a Pennsylvania corporation, presumably
at the request of Plaintiff and for the purpose of bolstering
Plaintiff's opposition to the motion.  In addition to this single
sale, Plaintiff also notes that Defendant advertises the

---

[1] Polenick also states that a small percentage of
Defendant's non-sprayer past sales (less than 2% of its gross
sales) "were likely destined for Maryland."  Id. ¶ 13.  To the
best of its knowledge, however, Defendant has made no sales of
any kind into Maryland in 2006.  Id.

[2] Ehrlich is also a distributor for Plaintiff's sprayers.

allegedly infringing sprayers on an internet website and has placed at least one advertisement for the sprayer in a pest control industry trade journal. Furthermore, Plaintiff alleges that Defendant retains a regional sales representative, George Frank, who solicits business for Defendant from customers in Maryland.

Concerning the single sale by Ehrlich, Defendant counters that Ehrlich is a independent distributor with whom Defendant had a relationship long before Ehrlich ever opened a distribution center in Maryland. Furthermore, according to Defendant, Defendant only transacts business with Ehrlich through Ehrlich's headquarters in Pennsylvania. In 2005, Defendant shipped 61 sprayers to Ehrlich, but none to Maryland. Ehrlich has not purchased any sprayers from Defendant in 2006. As to the website, Defendant asserts that it is "almost wholly passive," and that only a single product - a bed bug spray - can be purchased through the site. Reply 6. Concerning George Frank, Defendant asserts he is an independent sales agent with a large geographic territory who spends only a few days in Maryland each year representing several product lines in addition to that of Defendant.

It is questionable if this Court has personal jurisdiction over Defendant and it is less certain that this is a proper venue. Regardless of whether it could so find, the Court would also find that this case should be transferred to Northern Ohio for the convenience of the parties and witnesses and in the

interest of justice.[3]

When ruling on a section 1404(a) motion to transfer, courts can consider the following factors:

> (1) the plaintiff's initial choice of forum;
> (2) relative ease of access to sources of
> proof; (3) availability of compulsory process
> for attendance of unwilling witnesses, and
> the cost of obtaining attendance of willing
> and unwilling witnesses; (4) possibility of a
> view of the premises, if appropriate; (5)
> enforceability of a judgment, if one is
> obtained; (6) relative advantage and
> obstacles to a fair trial; (7) other
> practical problems that make a trial easy,
> expeditious, and inexpensive; (8)
> administrative difficulties of court
> congestion; (9) local interest in having
> localized controversies settled at home; (10)
> appropriateness in having a trial of a
> diversity case in a forum that is at home
> with the state law that must govern the
> action; and (11) avoidance of unnecessary
> problems with conflicts of laws.

Cole-Tuve, Inc. v. American Machine Tools Corp., 342 F. Supp. 2d 362, 369 (D. Md. 2004).

Although the first factor, the plaintiff's choice of forum, is generally given substantial weight, "the presumption does not apply in cases . . . where there is little material connection between the chosen forum and the facts and issues of the case," D'Anton Jos., S.L. v. Doll Factory, Inc., 937 F. Supp. 320, 323 (S.D.N.Y. 1996). Similarly, courts have held that the

---

[3] Even if this Court has no personal jurisdiction over Defendant, it can transfer the case. See Verosol B.V. v. Hunter Douglas, Inc., 806 F. Supp. 582, 593 (E. D. Va. 1992) ("Section 1406(a) has been interpreted broadly to allow transfer where there are impediments to an adjudication on the merits, such as a lack of personal jurisdiction over the defendant, in a plaintiff's chosen forum.").

plaintiff's choice of forum "is entitled to little consideration where . . . he has sued in a district other than the district in which he resides." <u>Paul v. International Precious Metals Corp.</u>, 613 F. Supp. 174, 179 (S.D. Miss. 1985). <u>See also</u>, <u>Union of Orthodox Jewish Congregations of America v. Brach's Confections, Inc.</u>, Civ. No. AMD-05-620, 2005 WL 1115222, *2 (D. Md. May 11, 2005) ("[T]he lower federal courts have routinely given less weight to a foreign plaintiff's choice of forum"); <u>Tischio v. Bontex, Inc.</u>, 16 F. Supp. 2d 511, 521 (D.N.J. 1998) (plaintiff's choice of forum is given less weight when he or she does not reside there or the forum has little connection to the "operative facts of the lawsuit"). Here, where Plaintiff is a Georgia corporation and the only connection between Maryland and this action is a post-filing sale of a single item, the Court gives little weight to the fact that Plaintiff elected to file its suit in this Court. <u>See Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.</u>, 387 F. Supp. 2d 564, 568 (E.D. Va. 2005) ("federal courts are not solicitous of plaintiffs claiming substantial weight for their forum choice where the connection with the forum is limited to sales activity without more").

After the Plaintiff's choice of forum, the convenience of witnesses is "[p]erhaps the most important factor." <u>Cronos Containers, Ltd. v. Amazon Lines, Ltd.</u>, 121 F. Supp. 2d 461, 465 (D. Md. 2000). "In this district, motions to transfer have been regularly granted where the defendant has shown that most of its key witnesses are residents of another district." <u>Id.</u> It is

undisputed that all those with knowledge of the design, production, and sale of the accused product and its related sales materials are located in Ohio.  Furthermore, all of the company records and other evidence related to that design and production would be located in Defendant's Ohio facility.

On the other side of the convenience of witnesses balance, the only Maryland individuals that Plaintiff has identified as likely to be called as witnesses are the employees of Ehrlich. Plaintiff argues that, because Ehrlich sells both B&G and Eaton sprayers, these employees would be able to give testimony as to the likeliness of customer confusion.  Opp. 16.  The Court notes, however, that the only confirmed sale by Ehrlich of an Eaton sprayer was the sale to Nestor and it is unlikely that there was any confusion attendant to that sale given that Nestor was sent specifically to buy an Eaton sprayer for the purpose of bolstering Plaintiff's litigation position.  Furthermore, Defendant represents that there are multiple distributors in Ohio who carry the sprayer at issue who are similarly situated to Ehrlich and thus could provide similar testimony.

The Court finds that none of the remaining factors can outweigh the advantage of the convenience to witnesses and ease of access to sources of proof that exist in Ohio.  Although Plaintiff makes much of the fact that, unlike Defendant, it has discussed "each and every factor," much of that discussion is strained if not outright disingenuous.  For example, in discussing the factor of the "Enforceability Of A Judgment, If

6

One is Obtained," Plaintiff argues that it "trusts that any judgment obtained in the State of Maryland would be accorded full faith and credit by the courts of Ohio, and thus this factor also favors <u>Plaintiff</u>."  Opp. 18 (emphasis in original).  Obviously, a judgment from the United States District Court for the Northern District of Ohio is equally enforceable as one issued from this Court.  Similarly, in discussing the "Appropriateness In Having A Trial Of A Diversity Case In A Forum That Is At Home With The State Law That Must Govern The Action," Plaintiff opines that "[s]ince the Plaintiff's claims are all based on federal question jurisdiction, this factor favors <u>Plaintiff</u>."  Opp. 19 (emphasis in original).  Again, there is no reason why the United States District Court for the Northern District of Ohio would not be as "at home" with federal law as this Court would be.[4]

For these reasons, the Court will transfer this action to the United States District Court for the Northern District of Ohio.  A separate order will issue.

---

[4] This latter argument is even more incomprehensible in that the Complaint actually contains several counts that Plaintiff asserted arose out of Maryland common law.  <u>See</u>, <u>e.g.</u>, Compl. Count VI (asserting trademark infringement in violation of the common law of the State of Maryland).  That Plaintiff minimizes, if not forgets, that it brought claims under Maryland law is perhaps reflective of its own view as to the strength its Maryland claims based upon a single post-filing sale in Maryland.

_____/s/_____
William M. Nickerson
Senior United States District Judge

Dated: September 27, 2006